IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RENA ANDERSON ALVARADO,<br><br>     Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>     Defendant. | **MEMORANDUM DECISION**<br><br>Case No. 2:14-cv-00353-PMW<br><br>Magistrate Judge Paul M. Warner |

Plaintiff Rena Anderson Alvarado ("Plaintiff"), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Acting Commissioner of Social Security (Commissioner) denying her claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act). After careful review of the entire record, the parties' briefs, and arguments presented at a hearing held on April 6, 2016, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and free of harmful legal error and is, therefore, **AFFIRMED**

This Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]." *Id.* (citation omitted). Where the evidence as a whole

1

can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

In this case, Plaintiff claimed disability at the age of 33, based on degenerative disc disease, dizziness, headaches, depression with panic attacks, and anxiety (Tr. 89, 153).  She completed several years of college and had past relevant work as a money counter (Tr. 413, 905). The ALJ followed the five-step sequential evaluation process for evaluating disability claims (Tr. 740-60).  *See generally* 20 C.F.R. § 404.1520(a)(4).  However, the ALJ found that Plaintiff's claims of completely disabling limitations were not entirely believable and that she retained the residual functional capacity to perform a limited range of sedentary work (Tr. 746-58). Considering this residual functional capacity, the ALJ found – consistent with the vocational expert's testimony – that Plaintiff was not capable of performing her past relevant work, but could perform other jobs existing in significant numbers in the national economy (Tr. 758-59). The Court finds that the ALJ's factual findings are supported by substantial evidence in the record and that the correct legal standards were applied.

**I.     The ALJ Reasonably Evaluated the Medical Source Opinions, in Compliance with the January 2012 Appeals Council Remand Order.**

Plaintiff asserts that the ALJ did not properly evaluate the opinions of Plaintiff's treating physicians (Pl. Br. 14-17).  However, the Court finds that the ALJ's assessment of the doctors' opinions was supported by substantial evidence.

Here, both of the state agency physicians (Drs. Kehrli and Eder) opined that Plaintiff was capable of a reduced range of light work (Tr. 253-60, 261).  The state agency psychologists (Drs. LeBray and Hennings) likewise opined that Plaintiff would be capable of at least simple work (Tr. 245, 247).  The Court concludes that these opinions were consistent with the record as

2

a whole. Plaintiff's physical examinations generally demonstrated that she retained full strength in her extremities, with a normal gait, normal reflexes, and intact neurological function (Tr. 283, 296, 334-35, 509, 593).

The record also showed that Plaintiff's mental impairments were well-controlled with medication, as she consistently reported significant improvement in her depression and anxiety when she was taking her medications regularly (Tr. 342, 346, 348, 357, 510, 512, 514-15, 517, 520, 632). Therefore, because these opinions were consistent with the record as a whole, which showed that Plaintiff's physical and mental impairments were not so severe as to preclude all work activity, the Court finds that they provided substantial evidence in support of the ALJ's residual functional capacity assessment (Tr. 746-47). *See* 20 C.F.R. § 404.1527 (e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008) (non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider).

In addition, while Plaintiff takes issue with the fact that the reviewing physicians' opinions were rendered in 2005, several years prior to the ALJ's decision, she does not highlight any significant intervening medical records (Pl. Br. 17). Plaintiff's suggestion that a reviewing opinion rendered later would have been more restrictive is undercut by evidence that her pain, depression, and anxiety were well-controlled with medication, her mostly normal physical examinations, and opinions from medical sources contradicting her claims of disability between 2005 and the time of the ALJ's decision (*see, e.g.*, Tr. 342, 348, 334-35, 509-10, 512, 514-15, 517, 520, 523-26, 590, 593, 617, 632-33).

The Court further finds that the ALJ also reasonably evaluated treating physician Dr. Hardy's opinion and determined that it was both inconsistent with the doctor's own treatment notes and with the record as a whole (Tr. 756). In January 2006, Plaintiff requested a note from Dr. Thomas "stating that she cannot work 30 hours per week as she is being requested by her welfare worker" (Tr. 535). Dr. Thomas indicated that Plaintiff had been "doing well," but wrote a note limiting Plaintiff to working two hours per day, 10 hours per week (Tr. 536). Dr. Thomas believed that this was a "reasonable place to start given that [Plaintiff had] not worked for several years" (Tr. 536). The ALJ considered this opinion, but concluded that it was entitled to little weight (Tr. 756).

The ALJ first determined that Dr. Thomas' opinion was inconsistent with her treatment notes, as Dr. Thomas consistently noted that Plaintiff was doing well and that her physical examinations were normal (Tr. 756; *see, e.g.*, Tr. 536, 523-26, 529). The ALJ also concluded that there was nothing in Dr. Thomas' treatment notes to show that Plaintiff was unable to work other than Plaintiff's own subjective complaints of pain; however, she also admitted that her pain was well-controlled with medication (Tr. 756; *see, e.g.*, Tr. 289, 310, 523-24, 525-26). Therefore, the Court finds that the ALJ reasonably determined that Dr. Thomas' opinion was unsupported by her own treatment notes and by other evidence of record. *See* 20 C.F.R. § 404.1527(c)(3); *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence).

Likewise, the Court also finds that the ALJ reasonably evaluated treating physician Dr. Hanst's opinions (Tr. 755-56). In December 2004, Dr. Hanst wrote a letter at Plaintiff's request, opining that she was "completely and permanently disabled" due to degenerative disc disease,

4

morbid obesity, and multiple joint arthralgias (Tr. 301).  In March 2005, Dr. Hanst opined that Plaintiff could lift less than 10 pounds occasionally and frequently; stand for less than two hours in an eight-hour workday; and sit for less than six hours in an eight-hour workday but must alternate between sitting and standing (Tr. 297-98).  In July 2005, he stated that she was permanently unable to work, attend school, or search for jobs (Tr. 290).  However, in November 2005, Plaintiff saw Dr. Hanst to follow up "on her chronic pain and disability" (Tr. 373).

Dr. Hanst explained that he "did believe that she [had] discomfort," but stated that he "did not find adequate objective evidence to support her disability and that . . . the best case would be for her to receive[] some vocational training that would allow her to have a happy, productive life.  At age 34, she is far too young to sit around and do nothing" (Tr. 373).  He noted that Plaintiff was currently in a vocational rehabilitation class for six hours a day (Tr. 373). The ALJ evaluated all of these opinions, but gave controlling weight only to Dr. Hanst's most recent opinion that there was no adequate evidence to support Plaintiff's disability (Tr. 755-56). The Court finds that the ALJ reasonably gave weight only to this last opinion, which was consistent with the record as a whole (as discussed above), and which provided substantial weight in support of the ALJ's residual functional capacity assessment.  *See* 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (doctor's recommendation that the claimant pursue vocational rehabilitation inconsistent with doctor's opinion the claimant was disabled).

Plaintiff also alleges that the ALJ did not comply with the Appeals Council's January 2012 remand order (Pl. Br. 13-14).  In general, the remand order directed the ALJ to evaluate

whether Plaintiff's obesity met a Listing; consider opinions from Drs. Lebray, Hennings, and Thomas; and give further consideration to Plaintiff's maximum residual functional capacity (Tr. 767-68). A review of the ALJ's decision makes it clear that the ALJ complied with the Appeals Council's directives. The ALJ considered whether Plaintiff's obesity met a Listing (Tr. 744), and also specifically evaluated the opinions of Drs. Lebray, Hennings, and Thomas (Tr. 756-57). And the ALJ extensively discussed the evidence supporting his finding that Plaintiff retained the residual functional capacity to perform a reduced range of sedentary work (Tr. 746-58).

Thus, the Court finds that the ALJ considered the issues required by the remand order.

## II.     The ALJ Reasonably Discounted Plaintiff's Subjective Complaints.

Plaintiff next asserts that the ALJ improperly evaluated her credibility (Pl. Br. 17-18). "Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). Here, the Court finds that the ALJ gave several good reasons, supported by substantial evidence, for finding Plaintiff not fully credible. *See* Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *2; *see also Kepler*, 68 F.3d at 391. Thus, the Court rejects Plaintiff's challenge to the ALJ's credibility finding.

The ALJ first found that the weight of the medical evidence demonstrated that Plaintiff's impairments were not as severe as she alleged (Tr. 748-49, 751-54). *See* 20 C.F.R. § 404.1529(c)(4); *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (noting the "lack of objective medical evidence" in upholding the ALJ's credibility finding). As the ALJ noted,

while Plaintiff complained of severe back and knee pain, a March 2002 lower back MRI revealed a herniated disc but "no radicular findings or history of any consistent radicular symptoms" (Tr. 749; *see* Tr. 338). Plaintiff had surgery on both knees in 2004, and by all accounts, her pain improved significantly following surgery (Tr. 197-98, 200-01, 215-17, 225-27). In 2005, Plaintiff had "no particular acute complaints" and her physical examinations were unremarkable during this time (Tr. 752; *see* Tr. 533, 535, 537). In January 2006, Dr. Maukonen found that Plaintiff had tenderness over her lower back, but no focal muscle weakness, a normal gait, normal reflexes, and intact sensation over her extremities (Tr. 753; *see* Tr. 334-35). He recommended only conservative treatment, including physical therapy, an exercise program, and weight loss (Tr. 753; *see* Tr. 335).

In April 2006, although Plaintiff reported pain after she started to work part-time, her doctor opined that her muscular pain was due to her increased activity and that it would "get better with conditioning" (Tr. 752; *see* Tr. 530). In October 2006, Plaintiff said that her knees were "better," she was able to walk without significant difficulty, and her knees were stable (Tr. 753; *see* Tr. 509). In February and March 2007, Plaintiff's back pain was controlled with medication (Tr. 752; *see* Tr. 523-24, 525-26). In May 2007, while Plaintiff complained of "whole body pain," a doctor concluded that he could not "really agree with [her] perception of pain because she didn't seem to exhibit any pain behavior whatsoever" (Tr. 754; *see* Tr. 593).

Based on the above, the Court finds that the ALJ reasonably concluded that the objective medical evidence suggested that Plaintiff had greater functioning than she admitted. *See* 20 C.F.R. § 404.1529 (c)(4); *White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2002) (claimant's admission that medication relieved some of her pain supported finding that her

7

impairments were not disabling); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1989) (upholding an ALJ's credibility finding where, despite his complaints of pain, the claimant demonstrated a satisfactory range of motion for the joints in question).

The ALJ also reasonably relied on evidence showing that Plaintiff's mental impairments were well-controlled with medication (Tr. 749-50). Indeed, Plaintiff often reported that her mood swings and depression improved when she was taking medication (*see, e.g.*, Tr. 342, 348, 517, 520). The ALJ also noted that Plaintiff was not always compliant with her treatment plan and that she was twice discharged from therapy because she failed to attend follow-up appointments (Tr. 750; *see* Tr. 643). The Court concludes that the ALJ reasonably relied on all of this evidence in concluding that Plaintiff's mental impairments were not as severe as she alleged and would not preclude all work activity. *See* 20 C.F.R. § 404.1529(c)(3)(iv); *Kelly v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (fact that impairment was well-controlled supported ALJ's conclusion the claimant was not disabled); *Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000) (ALJ reasonably found the claimant failed to follow prescribed treatment).

The ALJ also noted evidence suggesting that Plaintiff was visiting different doctors in order to obtain assessments favorable to her disability (Tr. 754). However, as the ALJ observed, several of these treatment providers actually opined that Plaintiff was not disabled and could work, which sharply undermined Plaintiff's credibility (Tr. 754). Indeed, in March 2004, Dr. Zoolhoski reported that Plaintiff wanted to be declared disabled so that she could obtain a disabled parking permit; however, he would "not recommend that she be declared disabled at the age of 32" (Tr. 754; *see* Tr. 319). Also during this time, Dr. Hanst opined that there was no "adequate objective evidence" to support Plaintiff's claims of disability, and Plaintiff switched

care as a result (Tr. 750; *see* Tr. 373, 537).  In May 2007, although Plaintiff complained of "whole body pain," her doctor could not "really agree with [her] perception of pain because she didn't seem to exhibit any pain behavior whatsoever" (Tr. 754; *see* Tr. 593).  And in December 2008, a physician's assistant "discussed with [Plaintiff] that she [was] not so totally disabled physically that there [was] not some sort of employment that she could qualif[y] for" (Tr. 754; *see* Tr. 617).

The Court finds that the ALJ appropriately determined that these opinions undermined Plaintiff's testimony that she was unable to work (Tr. 754).  *See* 20 C.F.R. § 404.1529(c)(4); *Gossett*, 862 F.2d at 807 (noting, in upholding ALJ's credibility finding, that the claimant's subjective pain testimony was not fully substantiated by the opinion of his treating physician).

Finally, the ALJ determined that Plaintiff's testimony of completely disabling limitations was inconsistent with her ability to attend school and participate in a regular exercise program (Tr. 754; *see* Tr. 334, 352, 638).  *See* 20 C.F.R. § 404.1529(c)(3)(i); *Gay v. Sullivan*, 986 F.2d 1336, 1339 (10th Cir. 1993) (holding a claimant's school performance contradicted his assertion that he could not participate in vocational rehabilitation and supported a finding he was not disabled).  Therefore, the Court finds that the ALJ provided several well-supported and valid reasons for finding Plaintiff's allegations of completely disabling limitations not credible.

In sum, the evidence consistently indicated that Plaintiff had normal sensation, normal strength, and normal gait, and that her pain, depression, and anxiety were well-controlled with medication.  The majority of the medical opinions did not support Plaintiff's claimed limitations.  However, giving Plaintiff the benefit of the doubt, the ALJ restricted her to a reduced range of

sedentary work (Tr. 746-47). The Court finds that the ALJ reasonably considered the evidence and the medical opinions in finding Plaintiff's complaints of disabling symptoms less than fully credible and instead determined that she retained the residual functional capacity to perform sedentary work with significant physical and mental restrictions. Thus, the Court finds that the ALJ sufficiently discussed the facts and reasoning in determining Plaintiff's residual functional capacity, and the ALJ did not err in his determination.

### III. The ALJ was not required to include limitations in the hypothetical to the vocational expert that the ALJ did not find credible.

Finally, Plaintiff asserts that the ALJ failed to pose a complete hypothetical question to the vocational expert. However, the Court finds the ALJ was not required to include in the hypothetical limitations that the ALJ did not find credible and that the ALJ's determinations that formed the basis of the hypothetical posed to the vocation expert were supported by substantial evidence. *See, e.g.*, *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding no error where the ALJ relied upon a hypothetical question to the vocational expert that included all of the limitations the ALJ ultimately included in his residual functional capacity assessment); *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) ("The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record.").[1]

### CONCLUSION

Because the ALJ's decision is supported by substantial evidence and is free of harmful

---

[1] Plaintiff also argues that the Court should either remand this case or reverse for an award of benefits. The Court does not find that this is a substantive argument that requires findings or a

legal error, it is **AFFIRMED**. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993). The Clerk of Court is directed to close the case.

      DATED this 26th day of May, 2016.

                                      PAUL M. WARNER
                                      United States Magistrate Judge

---

determination. Regardless, in light of the Court's findings, neither a new hearing nor a reversal with an award of benefits is appropriate.